UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ANTONIO TONY ARENA,

                      Plaintiff,        12-CV-06013

         v.                           **DECISION**
                                                   **and ORDER**
MICHAEL J. ASTRUE, Commissioner
of Social Security,

                      Defendant.
_____

## INTRODUCTION

Plaintiff, Antoinio Arena ("plaintiff"), proceeding *pro se*, brings this action pursuant to §§ 216(i) and 223 of the Social Security Act ("the Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner"), finding that the plaintiff is not disabled. Specifically, the plaintiff alleges that the decision of the Administrative Law Judge, MaryJoan McNamara("ALJ"), that the plaintiff was not disabled within the meaning of the Act, was not supported by substantial evidence in the record.

The Commissioner and plaintiff both move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"). The Commissioner claims that the ALJ's decision is supported by substantial evidence. In response, plaintiff claims the ALJ's decision was not supported by substantial evidence in the record. For the reasons set forth below, the Commissioner's motion

for judgement on the pleadings is granted, and the plaintiff's motion is denied.

## BACKGROUND

Plaintiff filed an application for supplemental security income and disability insurance benefits on April 21 2009. The application was denied on July 15, 2009. Plaintiff, who was represented by a non-attorney advocate during his administrate proceedings, filed a request for a hearing on July 27, 2009, which was held on April 8, 2011. Following the hearing, the ALJ found that plaintiff was not entitled to either supplemental security income or disability insurance benefits because he was not disabled within the meaning of the Act. Subsequently, a request for review of the hearing decision was filed with the Appeals Council. The Appeals Council denied the request on November 10, 2011. Consequently, the ALJ's hearing decision became the final decision of the Commissioner.

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. §405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. When considering these cases, this section directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938). The Court's scope of review is limited to whether or not the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. See Monger v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case *de novo*). The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D. Tex. 1983) (citation omitted).

The parties dispute whether the ALJ's decision is supported by substantial evidence and have moved for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. See generally Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). This Court finds that thereis substantial evidence in the record for the ALJ to find that the plaintiff was not disabled within the meaning of the Act between February 27, 2007 and April 21, 2009 the period for which

benefits were sought. Therefore, the Commissioner's motion for judgment on the pleadings is granted, and the plaintiff's motion is denied.

II. **There is Substantial Evidence in the Record to Support the Commissioner's Decision that the Plaintiff was not Disabled Within the Meaning of the Act from February 27, 2007 to April 21, 2009.**

In her decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Transcript of Administrative Proceedings at 9-10) (hereinafter "Tr."). The five-step analysis requires the ALJ to consider the following:

(1) Whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activities;

(3) if the claimant suffers a severe impairment, the ALJ considers whether the claimant has an impairment which is listed in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is presumed disabled;

(4) if not, the ALJ considers whether the impairment prevents the claimant from doing past relevant work;

(5) if the claimant's impairments prevent his or her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodate the claimant's residual functional capacity and vocational factors, the claimant is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

Here, the ALJ found that 1) the plaintiff has not engaged in substantial gainful activity between February 27, 2007 and April 21, 2009; 2) the plaintiff has the severe mental impairments

4

of major depressive disorder and anxiety disorder coupled with an assortment of minor physical impairments; 3) the plaintiff's combination of impairments do not meet or equal any of the listed impairments; 4) the plaintiff has a residual functional capacity to perform less than the full range of light work; and 5) there are jobs that exist in significant numbers in the national economy that the claimant can perform. (Tr. 10-20). The ALJ, therefore, concluded that plaintiff was not disabled within the meaning of the Act. (Tr. 20).

A. <u>There is Substantial Evidence in the Record to Support the ALJ's Finding that Plaintiff's Physical Impairments are not Severe Within the meaning of the Act.</u>

Plaintiff alleged various physical impairments including carpal tunnel, asthma, and sleep apnea. (Tr. 41-46). The ALJ, however, found that plaintiff's physical impairments were not severe.(Tr. 10-12). An impairment is severe when it significantly limits a claimant's physical or mental ability to do basic work activities. 20 CFR §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." 20 C.F.R. § 404.1521(b)(1)-(5). "[T]he combined effect of a claimant's impairments must be considered ... the

5

[Commissioner] must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe." Dixon v. Shalala, 54 F.3d 1019, 1031 (2d Cir. 1995).

Consulting Examiner, Eric Logiglan, M.D., found plaintiff's carpal tunnel to be mild to moderate. (Tr. 318). Treating Physician, Kellie Reed, M.D., found full bilateral grip strength upon examination. (Tr. 414). Treating Physician, Karen Nead, M.D., found plaintiff's exam to be unremarkable with a bilateral hand grip of 4/5. (Tr. 412).

With respect to asthma, plaintiff uses a Ventolin Inhaler to control his symptoms. (Tr. 46). Dr. Nead found plaintiff's lungs to be clear to auscultation. (Tr. 410). Similarly, Consulting Examiner, Karl Eurenius, M.D., found plaintiff's lungs to be normal and clear to auscultation. (Tr. 427).

Plaintiff's sleep apnea was treated with a CPAP mask. (Tr. 35; 571). Further, plaintiff's medical records show that plaintiff repeatedly reported that his sleep was fine. (Tr. 363; 514; 529; 582). Dr. Nead and Dr. Reed both reported that plaintiff suffers from mild obstructive sleep apnea. (Tr. 409; 411).

Regarding plaintiff's other physical ailments, Consultive Examiner, Sandra Boehlert, M.D., found plaintiff did not present with any acute distress, had excellent balance, was able to squat three quarters of the way down with excellent strength and was able to move on and off the exam table without difficulty. (Tr. 599).

6

Dr. Eurenius's musculoskeletal exam of plaintiff showed no problems in cervical spine movement or abnormalities in the thoracic spine. (Tr. 428). Dr. Eurenius did observe some lower back pain. (Tr. 428-29). Dr. Nead acknowledged plaintiff's back and knee pain and encouraged plaintiff to follow up with the pain clinic. (Tr. 408). Plaintiff then saw Treating Physician, Dr. Bryce Gillespie M.D. regarding his knee. (Tr. 368). Dr. Gillespie found minimal effusion, full range of motion, and a negative pivot shift test. Id. At plaintiff's general examination follow up at the pain clinic, Calvin Chiang, whose position is not identified in the record, found that plaintiff had diffused back pain with some radicular components to his pain and recommended a treatment plain of nonopiod medication and physical therapy. (Tr. 478).

The evidence cited above constitutes substantial evidence supporting the ALJ's finding that the physical ailments suffered by plaintiff, both individually and in combination, do not effect his ability to perform basic work functions. Thus, this Court affirms the ALJ's determination that plaintiff's physical impairments are non-severe.

B. <u>The ALJ's Finding that Plaintiff's Severe Anxiety Disorder and Major Depressive Disorder did not Meet or Equal the Listings is Supported by Substantial Evidence in the Record.</u>

The ALJ specifically considered listings 12.04 and 12.06 in his determination that plaintiff did not meet or equal a listed disability. (Tr. 12). The record demonstrates that plaintiff

7

repeatedly reported anxiety and depression symptoms in his testimony and in medical records. (Tr. 41-42; 307; 342-66; 376; 448; 539). Thus, the ALJ's determination to evaluate plaintiff under the 12.04 and 12.06 listings was the correct standard of law to apply.

In order to statutorily meet either an affective disorder (12.04) or anxiety related disorder (12.06) listing, a claimant must have impairment-related functional limitations that are incompatible with the ability to do any gainful activity. See 20 CFR Part 404, Subpt. P, App. 1, Sec. 12(A). Thus, after establishing the existence of a disorder in accordance with the Act, a claimant must show that his impairment debilitates him functionally by satisfying either the 'B' or 'C' requirements of 12.04 and 12.06. See 20 CFR Part 404, Subpt. P, App. 1, §§ 12.04, 12.06.

The 'B' criterion for both disorders are the same. A claimant must have at least two of the following: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence or pace; (4) repeated episodes of decompensation, each of extended duration. Id.

To satisfy the 'C' requirements under 12.04 a claimant must have a:

> [m]edically documented history of a chronic affective disorder of at least 2 years duration that has caused

8

> more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) repeated episodes of decompensation, each of extended duration; or (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to deompensate; or (3) current history of 1 or more years inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 CFR Part 404, Subpt. P, App. 1, § 12.04(C).

The 'C' requirement under 12.06 requires that claimant's anxiety disorder results "in complete inability to function independently outside the area of one's home." 20 CFR Part 404, Subpt. P, App. 1, § 12.06(C).

The evidence in the record reveals that plaintiff lived alone, drove, took care of his personal needs, cooked three times per week, and did laundry and cleaned monthly. (Tr. 426; 435; 588). Plaintiff also volunteered at an animal shelter. (Tr. 379). The record does not contain any opinion by a treating, examining, or reviewing source that asserts plaintiff met or equaled a listing. Indeed, Consulting Examiner Dr. Apacible determined that plaintiff specifically did not meet the statutory requirements under 12.04 and 12.06. (Tr. 326; 328). Mental status findings by plaintiff's therapist and nurses showed mostly normal findings, and the abnormal findings were generally intermittent. (Tr. 348; 376; 327-39).

9

There is substantial evidence to support the ALJ's finding that there were no marked limitations or repeated episodes of decompensation in order to satisfy the 'B' criterion of both 12.04 and 12.06 because there is no evidence in the record supporting the 'B' criterion. With respect to the 'C' requirements of 12.04, there is substantial evidence in support of the ALJ's finding that the plaintiff does not satisfy the 'C' requirements of 12.04 because there is no evidence of (1) repeated episodes of decompensation of extended duration, (2) a residual disease process that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate, or (3) that plaintiff has been unable to function outside a highly supported living arrangement. Finally, there is substantial evidence supporting the ALJ's determination that the 12.06 'C' requirement is not satisfied because the record indicates that plaintiff is capable of functioning independently outside his home.(Tr. 379; 426; 435; 588). Therefore, the above indicates that the ALJ's determination that plaintiff did not meet a listing is supported by substantial evidence in the record.

C. <u>The ALJ's Residual Functional Capacity is supported by Substantial Evidence in the Record.</u>

Plaintiff alleges that he is disabled within the meaning of the Act because he suffers from major depressive disorder, anxiety disorder, and a litany of physical ailments. The ALJ, however, found that plaintiff had the residual functional capacity to do

10

light work with some qualifications. (Tr. 13). Specifically, the ALJ determined that plaintiff retained the ability to perform simple, routine, repetitive low stress work at the light level of exertion with a sit/stand option; occasional climbing, balancing, stooping, kneeling, crouching, and crawling; and that he needed to avoid fumes, odors, gases, and poor ventilation; and could maintain concentration and attention as necessary. Id. The ALJ also noted that plaintiff would be better off interacting with members of the public no more than one-third of his working time, but was capable of interacting with others. Id.

> The Code of Federal Regulations defines light work as:
>
> lifting no more than 20 pounds at a time occasionally, with frequent lighting or carrying of objects weighing up to ten pounds. 20 CFR 404.1567(b). Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. Id. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. Id. If someone can do light work, we determine that unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR 404.1567(b).

As noted in the previous section, plaintiff lived alone, drove, took care of his personal needs, cooked three times per week, did laundry, cleaned and volunteered at an animal shelter. (Tr. 379; 426; 435; 588).

11

With respect to plaintiff's physical conditions, clinical examinations regularly revealed that plaintiff retained full or near-full strength and only minor range of motion limitations. (Tr. 307; 408; 412; 428; 478; 599-600). Dr. Eurenius opined that plaintiff was moderately limited in walking more than 100 years, climbing more than one flight of stairs, lifting more than 20 pounds, carrying more than 40 pounds, and recurrent kneeling. (Tr. 429). Dr. Boehlert opined that plaintiff had mild to moderate limitations to repetitive heavy exertional activity, or repetitive bending and twsighing of the lumbar spine. (Tr. 600).

With respect to plaintiff's mental capabilities, Dr. McAndrews opined that plaintiff would be able to understand and follow simple directions. (Tr. 435). Dr. Apacible opined that plaintiff was not disabled, noting that plaintiff retained the ability to consistently perform entry-level work involving repetitious sorting, tending, and handling in an environment that required a minimum of social interaction. (Tr. 340). Dr. Russow noted that plaintiff appeared more capable than his confidence level would suggest. (Tr. 495). Dr. Jean-Jacques opined that plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independent, make appropriate

decisions, relate adequately with others, and appropriately deal with stress. (Tr. 591).

This physical and mental evidence in the record provides substantial evidence in support of the ALJ's finding that plaintiff could perform restricted light work.

D. <u>There is Substantial Evidence in the Record to Support the ALJ's Finding that there is Work in the National Economy that Plaintiff is Capable of Performing.</u>

The ALJ found that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform. (Tr. 18). In order to make this determination the ALJ must consider plaintiff's age, education, work experience, and vocational factors which govern plaintiff's ability to perform other work in the national economy. <u>See</u> 20 CFR §§ 416.960, 416.963, 416.964, 416.965. Ordinarily, "the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)." <u>Bapp v. Bowen</u>, 802 F.2d 601, 604 (2d Cir. 1986). An ALJ may move off the grid and consider testimony from a vocational expert "where there is evidence that the claimant's nonexertional limitations 'so narrow [her] possible range of work as to deprive [her] of a meaningful employment opportunity.'" <u>Taylor v. Barnhart</u>, 83 Fed. Appx. 347, 350-351 (2d Cir. 2003) (<u>quoting</u> Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986)). An ALJ may rely on the opinion of a vocational expert to demonstrate

that jobs exist in the national economy, which plaintiff can perform where there is substantial evidence supporting the hypothetical question upon which the vocational expert's opinion was based. See Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983).

The record shows that the ALJ considered the testimony of a vocational expert. (Tr. 64). The ALJ presented the vocational expert with a hypothetical in which the worker was limited to the restricted light work discussed above. Id. The vocational expert testified that there were jobs that such an individual could perform and provided several examples. (Tr. 64-67). Therefore, the ALJ followed the proper legal standard for making her determination at the final step and substantial evidence supports his finding.

## CONCLUSION

For the reasons set forth above, this Court finds that the Commissioner's decision to deny the plaintiff benefits is supported by substantial evidence in the record. Therefore, I grant the Commissioner's motion for judgment on the pleadings. The Plaintiff's motion is denied, and his complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
         February 4, 2013